```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

**MELISSA ANN FLANNERY,**

        **Plaintiff,**
  vs.                                      Civil Action 2:11-CV-1120
                                                Judge Frost
                                                Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 11, and the Commissioner's *Memorandum in Opposition*, Doc. No. 16.

Plaintiff Melissa Ann Flannery filed her applications for benefits on April 15, 2010, alleging that she has been disabled since March 31, 2010, as a result of back and knee problems, anger issues, arthritis, cocaine addiction and problems with her nerves and depression. *PAGEID* 260. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

A video hearing was held on July 19, 2011, at which plaintiff, represented by counsel, appeared and testified, as did Harry Tanzey,

who testified as a vocational expert. In a decision dated July 28, 2011, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *Page ID* 47-58. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 14, 2011. *Page ID* 37-40.

Plaintiff was 42 years old on her alleged disability onset date. She has a high school education and past relevant work experience as a laborer, manager in a carry-out drive thru and substitute school bus driver. Plaintiff also served as a utility helicopter mechanic in the United States Army from 1987 to 1991.

Plaintiff testified at the administrative hearing that she quit working in March 2010 because she could no longer lift the boxes of inventory in the drive-thru carry out that she managed for her mother; additionally, she could not deal with people.[1] *Page ID* 73. She does not want to be around people and has anger issues. *Page ID* 81.

Plaintiff also testified that she is depressed. *Page ID* 85. She sometimes "throw[s] a fit," which drives people away. *Id*. When she is feeling depressed, she just wants to go to bed. *Id*. She is also easily distracted. *Page ID* 86. She often finds herself beginning one task and ending up in another room doing something else. *Page ID* 86-88.

Although plaintiff acknowledged a history of cocaine use, she

---

[1] Plaintiff alleged both physical impairments. Her *Statement of Errors*, however, focuses primarily on her mental impairments and limitations. Accordingly, the Court will focus its review of the hearing testimony and medical evidence on plaintiff's mental impairments and limitations.

2

indicated that she has not used cocaine since February 2007. *Page ID* 92-93.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile who, from a mental perspective, is limited to simple, routine, repetitive tasks with only occasional contact with co-workers and the general public. *Page ID* 115-16. The vocational expert testified that such a claimant could not perform plaintiff's prior work but could perform jobs at the unskilled sedentary level, including such jobs as assembler (90,000 such jobs nationally and 6,500 such jobs regionally) and as price marker (67,000 jobs nationally and 2,000 jobs regionally). *Page ID* 115-16.

Asked to assume, in addition, a restriction to only occasional contact with supervisors, the vocational expert responded that the claimant could perform the same jobs, but that the job base, including the jobs previously identified, would be reduced "by probably 75 percent." *Page ID* 116-17.

Plaintiff began mental health treatment at L & P Services, Inc. ("L & P Services") on June 26, 2009, upon referral by her probation officer. *Page ID* 313-22. The intake assessment included diagnoses of alcohol dependence, in partial remission; cocaine dependence, in sustained full remission; anxiety, not otherwise specified; and depression, not otherwise specified. *Page ID* 321. Plaintiff was assigned a Global Assessment of Functioning ("GAF") score of 55. *Id.* Plaintiff was referred to counseling.

3

Kenneth Leopold, M.D., was plaintiff's treating family practitioner from February 1995 to April 2011. *Page ID* 376-417. In July 2009, Dr. Leopold diagnosed generalized anxiety disorder and renewed plaintiff's prescriptions for Vicodin, Flexeril and Xanax. He strongly recommended that plaintiff follow up with mental health counseling and expressed some concern regarding plaintiff's use of medication: "We need to watch her closely. We will not be giving her meds early and we will continue to monitor the situation." *Page ID* 393.

In September 2009, plaintiff underwent an evaluation at L & P Services by Carla Rosler, CNS. Plaintiff reported that she was worried about upcoming court hearings and the possibility of imprisonment; she consequently had difficulty concentrating. Ms. Rosler characterized plaintiff's judgment and insight as poor, noting specifically that plaintiff kept old guns in her house. According to Ms. Rosler, plaintiff was oriented. Plaintiff's intake diagnoses remained unchanged. *Id.*

In October 2009, plaintiff complained to Dr. Leopold of stress, anxiety and inability to concentrate. *Page ID* 393. She described "feeling trapped between her duties at the carry out store and the financial pressures that come with it[,] along with feeling distractions from different people always wanting to talk to her and she feels like she cannot get anything accomplished." *Id.* Dr. Leopold prescribed mood stabilizing medication and obtained permission to speak with plaintiff's counseling service. *Id.*

4

On April 1, 2010, Dr. Leopold completed a basic medical form and characterized plaintiff as "employable." *Page ID* 406-07.

Plaintiff was consultatively examined by clinical psychologist Gary Sarver, Ph.D., in July 2010. *Page ID* 345-51. Dr. Sarver indicated that plaintiff's independent living skills appeared to be adequate in light of her ability to cook, do dishes and laundry, and shop. *Page ID* 345. Plaintiff reported that she was depressed about her daughter moving out, but denied any subjective anxiety or worry. *Page ID* 347. On clinical examination, Dr. Sarver noted that plaintiff's speech and language were within normal limits, although plaintiff was quite loquacious and had to be frequently redirected to the original question asked. *Id.* Dr. Sarver noted no motoric indications of anxiety, unusual apprehension, vigilance, panic attacks, or agoraphobia. *Id.* Plaintiff's short-term memory, attention and long-term memory were functionally intact. *Page ID* 348. Concentration, persistence, and pace were appropriate. *Page ID* 349. Plaintiff was pleasant, cooperative, interactive, and responded appropriately to the test situation. *Id.* Plaintiff reported that she had a few friends; she like to fish. *Id.* Dr. Sarver diagnosed adjustment disorder with mixed anxiety and depressed mood, polysubstance dependence (in early sustained remission), and personality disorder, not otherwise specified. *Page ID* 350. According to Dr. Sarver, plaintiff was moderately impaired in her ability to relate to others and to manage daily work stresses secondary to her personality disorder and poor coping skills. *Id.* Plaintiff was not impaired in her ability to

5

maintain attention and to perform simple, repetitive tasks, or in her ability to understand and follow simple one- and two-step job instructions. *Id.*

State agency psychologist Mel Zwissler, Ph.D., completed a psychiatric review technique form in July 2010. *Page ID* 353-66. According to Dr. Zwissler, the record documented an adjustment disorder with mixed anxiety and depressed mood, a personality disorder not otherwise specified, and polysubstance dependence. *Page ID* 356-61. Dr. Zwissler opined that plaintiff had no restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. *Page ID* 363. In a mental residual functional capacity assessment, Dr. Zwissler concluded that plaintiff would be moderately impaired in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and in her ability to interact appropriately with the general public, to accept instructions and to respond appropriately to criticism from supervisors and to changes in the work setting. *Page ID* 367-68. Her ability to relate to others was moderately limited by depression and isolating behaviors; her ability to follow instructions and to maintain concentration were no more than mildly limited; her ability to cope with stress and pressure was moderately limited by psychological conditions *Page ID* 369. Dr. Zwissler concluded that

6

plaintiff retained the ability to perform tasks in a relatively static work environment where contact with others was occasional and superficial in nature. *Id.* In October 2010, Frank Orosz, Ph.D., another state agency psychologist, reviewed the file and affirmed Dr. Zwissler's assessment. *Page ID* 373.

In September 2010, plaintiff reported to Dr. Leopold that she had discontinued Celexa because it made her feel "hyper." *Page ID* 410. Dr. Leopold speculated that plaintiff may suffer from bipolar disorder based on her history of manic problems with Celexa. *Id.* He started her on Seroquel and recommended a referral to a psychiatrist for evaluation of possible bipolar disorder. *Id.* The following month, plaintiff reported that she was doing somewhat better on Seroquel. *Page ID* 410. Dr. Leopold noted that plaintiff had still not undergone a psychiatric evaluation at L & P Services. Dr. Leopold increased plaintiff's Seroquel dosage and concluded that, until plaintiff undergoes a psychiatric evaluation, "her ability to work is severely compromised and I do not feel she is capable of employment at the present time." *Id*.

On November 1, 2010, Dr. Leopold opined that plaintiff suffers from "Generalized Anxiety Disorder with possible Bipolar Disorder and some component of Attention Deficit Disorder." *Page ID* 413.

> I believe her ability to work is severely compromised. I am unable to release her to work at this time. <u>I feel she is incapable of gainful employment until psychiatric evaluation</u>.

7

*Page ID* 413 (emphasis added).

In January 2011, plaintiff reported to Dr. Leopold that she still had not undergone a psychiatric evaluation. *Page ID* 416. In February 2011, plaintiff reported that she had discontinued another psychiatric medication. Dr. Leopold recommended that she discuss this matter with a psychiatrist at L & P Services. *Id.*

Plaintiff underwent a psychiatric evaluation Brendan Carroll, M.D., at a Veterans Administration Medical Center ("VA") on March 24, 2011. *Page ID* 433-40. Plaintiff reported that, according to family members, "her moods overall [we]re better, less short fused" *Page ID* 434. She denied side effects from her medications. *Page ID* 434. On mental status examination, plaintiff was alert and attentive, her behavior was cooperative and reasonable, her speech was normal, her affect was congruent with her mood, her thought processes and associations were normal and coherent, and her insight and judgment were good. *Page ID* 437. Dr. Carroll made working diagnoses of bipolar disorder (not otherwise specified) per patient history, anxiety disorder per patient history, addictive disorder, and attention deficit disorder. *Id.* Plaintiff was assigned a GAF score of 58. *Page ID* 438.

Heidi Jache, M.D., a psychiatrist with L & P Services, began treating plaintiff in March 2011. *Page ID* 456-62. Plaintiff denied mania, suicidal ideation or self-abusive behavior. *Page ID* 456. Although plaintiff reported that her memory was not good, but Dr. Jache observed excellent memory of dates in the past. *Id.* On mental

status examination, plaintiff was well-groomed, displayed average eye contact and demeanor, had a euthymic mood and a full affect and was cooperative. 459. Her speech was moderately rapid and mildly pressured. *Id.* Plaintiff reported "a great deal of stress" related to her girlfriend's drinking issues, problems with her home and her daughter's relationship problems. *Page ID* 460. She also reported that, according to her family, Seroquel had helped with plaintiff's mood swings and anger. *Id.* Dr. Jache diagnosed bipolar disorder, not otherwise specified, generalized anxiety disorder, nicotine dependence, alcohol and cocaine dependence (abstaining since 2007); the doctor also suggested that attention deficit hyperactivity disorder and organic affective disorder as a result of cocaine and alcohol use be ruled out. *Id.* Dr. Jache recommended continued use of Seroquel and weaning off Xanax, which had been prescribed by Dr. Leopold. *Page ID* 461.

Dr. Leopold commented in April 2011 that plaintiff's "pain and generalized anxiety with possible bipolar disorder" is "under good control." *Page ID* 416.

Dr. Jache noted in May 2011 that plaintiff's mood was "ok/congruent" and her behavior was "good." Although Dr. Jache found plaintiff to be hypomanic, time did not permit exploring another mood stabilizer. Plaintiff was assigned a GAF score of 45. *Page ID* 463-65.

In his decision, the administrative law judge found that plaintiff's severe mental impairments consist of anxiety disorder, depressive disorder, and personality disorder. *Page ID* 49. The

9

administrative law judge expressly excluded plaintiff's prior polysubstance abuse as a severe impairment, based on plaintiff's own testimony and the record. *Page ID* 50.

The administrative law judge went on to find that plaintiff's mental impairments neither met nor equaled an impairment under Listings 12.04 (affective disorders), 12.06 (anxiety disorders) or 12.08 (personality disorders) because the record did not establish that plaintiff's mental impairments met the "B" criteria of those Listings, *Page ID* 50-51, nor did they meet the "C" criteria of Listings 12.04 or 12.06. *Id.*[2]

Relying on the assessments of Dr. Sarver and the state agency psychologists, the administrative law judge found that plaintiff's mental impairments limited her to simple routine repetitive tasks and occasional contact with co-workers and the public. *Page ID* 51, 55, 56. The administrative law judge accorded "no weight" to the GAF score of 45 assessed by Dr. Jache, finding that the score was not supported by either the evidence as a whole or Dr. Jache's own objective findings. *Page ID* 56.

Although plaintiff's residual functional capacity, as found by the administrative law judge, would not permit the performance of plaintiff's past relevant work, *Page ID* 56, the administrative law judge relied on the vocational expert's testimony to find that plaintiff could perform other work that exists in significant numbers in the national economy. *Page ID* 57-58. Accordingly, the

---

[2]Listing 12.08 does not include "C" criteria.

10

administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *Page ID* 58.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Errors*, plaintiff contends that the administrative law judge erred in failing to include plaintiff's

11

diagnosis of bipolar disorder in the list of plaintiff's severe impairments and in relying on the vocational expert's testimony without first properly including in the residual functional capacity the full range of non-exertional limitations caused by the claimant's severe mental impairments. Plaintiff also contends that the administrative law judge failed to accord proper weight to Dr. Leopold's opinions of disability.

As noted, the administrative law judge did not include bipolar disorder among plaintiff's severe impairments. It was only Dr. Jache who expressly diagnosed this condition; the consultative examiner and the state agency psychologists did not include bipolar disorder. There is therefore substantial support in the record for the administrative law judge's failure to include this condition as a sever impairment. In any event, however, the failure of an administrative law judge to include a particular condition among a claimant's severe impairment does not constitute reversible error if, considering the claimant's other severe impairments, the administrative law judge's residual functional capacity assessment reasonably accommodates the limitation of function caused by such impairment. *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 576-77 (6th Cir. 2009). "[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" *Id.* at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240. 244 (6th Cir. 1987)). In

the case presently before the Court, the administrative law judge found that plaintiff suffers severe mental impairments and reasonably accommodated those impairments in assessing plaintiff's residual functional capacity. Indeed, although plaintiff challenges the residual functional capacity assessment of the administrative law judge, she does not articulate any additional limitation of function simply by reason of her claimed bipolar disorder. Under these circumstances, the Court concludes that plaintiff's challenge to the decision of the administrative law judge by reason of the failure to include bipolar disorder among plaintiff's sever impairment is without merit.

Plaintiff also complains that, in assessing plaintiff's residual functional capacity, the administrative law judge failed to include all the limitations caused by plaintiff's severe mental impairments. Plaintiff specifically refers to the opinion of Dr. Sarver, the consultative examiner to whose opinions the administrative law judge gave great weight, who opined that plaintiff was moderately impaired in many areas of work-related functioning.

Although Dr. Sarver opined that plaintiff was moderately impaired in certain work-related areas of functioning, he also concluded that plaintiff was not impaired in her ability to maintain attention, to perform simple, repetitive tasks and to understand and follow simple one and two step job instructions. *Page ID* 350. The state agency psychologists who reviewed the record, including Dr. Sarver's assessment, concluded that plaintiff's documented mental

13

impairments left her with the residual functional capacity to perform tasks in a relatively static work environment where contact with others was occasional and superficial in nature. *Page ID* 369, 373. The administrative law judge's finding that plaintiff had the residual functional capacity, from a mental standpoint, to perform simple, routine, repetitive tasks that require only occasional contact with co-workers and the public is consistent with these assessments and enjoys substantial support in the record.

Finally, plaintiff complains that the administrative law judge failed to accord appropriate weight to Dr. Leopold's opinions of disability. In assessing Dr. Leopold's opinions, the administrative law judge reasoned as follows:

> I give little weight to the opinions of Dr. Leopold that the claimant was incapable of gainful employment, as they are not supported by objective findings indicated in his own treatment notes. Dr. Leopold indicated that claimant had to have a psychiatric evaluation before he released her to work, but mental health evidence reveals she was not as limited as alleged and functioned well when compliant with treatment. Additionally, on April 28, 2011, a treatment note reveals Dr. Leopold opined the claimant's condition was under good control.

*Page ID* 55. Although the opinion of a treating physician should be accorded controlling weight if it is consistent with the evidence and supported by sufficient clinical findings, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007), an administrative law judge is not bound by such an opinion if there is substantial medical evidence to the contrary. *Id.* In addition, the administrative law

14

judge is not bound by a physician's conclusory opinion that a claimant is unable to work. *See Bass v. McMahon, 499 F.3d 506*, 511 (6th Cir. 2007).

Dr. Leopold is a family practitioner and, as the administrative law judge noted, mental health experts rendered opinions that were inconsistent with certain of Dr. Leopold's opinions. Moreover, even Dr. Leopold was not consistent in his opinions. For example, Dr. Leopold opined in April 2010 that plaintiff was "employable." *Page ID* 407. Other opinions of disability were conditional on plaintiff's anticipated psychiatric evaluation. *See, e.g., Page ID* 410, 413. Finally, in April 2011, Dr. Leopold noted that plaintiff's mental impairments were "under good control." *Page ID* 416. Under all these circumstances, the Court concludes that the administrative law judge's assessments of Dr. Leopold's opinions enjoy substantial support in the record.

Having carefully reviewed the record, the Court concludes that the decision of the Commissioner applied all appropriate standards and is supported by substantial evidence.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be

filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.* *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

*s/Norah McCann King*
Norah McCann King
United States Magistrate Judge

January 28, 2013

16